UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:24-CV-00002-EBA

JOHNNY BRANHAM,                                                          PLAINTIFF,

V.                **MEMORANDUM OPINION & ORDER**

MICHELLE KING,
*Acting Commissioner of Social Security*,                          DEFENDANT.

*** *** *** ***

Plaintiff Johnny Branham appeals the Social Security Commissioner's denial of his application for disability insurance benefits. [R. 1; R. 31]. Specifically, Branham alleges that the Administrative Law Judge (ALJ) wrongfully denied his disability benefits when she improperly discounted the medical opinions of Dr. Emily McGuire and Dr. Stephen Nutter. [R. 31]. The Commissioner filed a Response opposing Branham's position, [R. 35], but Branham did not file a Reply. This matter is therefore ripe for review. For the reasons discussed below, the Court will affirm the Commissioner's decision.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff Branham is a resident of Pike County, Kentucky, who suffers from degenerative disc disease of the lumbar spine, obesity, sleep apnea, and a depressive disorder. [R. 5-1 at pg. 2]. Due to these impairments, Branham applied for disability benefits in September of 2004, but his application was denied. [R. 19 at pg. 556]. Branham then filed another application for disability benefits in January of 2007, alleging a disability onset date of January 25, 2007. [R. 5-1 at pg. 2]. At the time of his second application, Branham was represented by Kentucky attorney Eric Conn.

[*Id.*]. On October 16, 2007, ALJ David Daugherty issued a fully favorable decision on Branham's behalf, finding him disabled based on evidence from Dr. Frederic Huffnagle. [*Id.*].

Unfortunately, this was not the end of the matter. As the Sixth Circuit later explained, it was discovered that Mr. Conn "secured benefits for his clients by submitting fraudulent reports to the Social Security Administration" and ALJ Daughtery "also participated in the scheme by taking bribes from Conn to assign Conn's cases to himself and issue favorable rulings." *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 791–92 (6th Cir. 2018).[1] This scheme was eventually discovered by the Social Security Administration (SSA) via two referrals received in May 2015 and November 2017. [R. 17 at pg. 4]. Ultimately, the Office of Inspector General (OIG) referred approximately 3,700 cases to the SSA based on its belief that fraud was involved in the application for benefits in each of these cases. [*Id.*]. Branham's application was one of the identified cases. [R. 19 at pgs. 950–53]. The Appeals Council then sent notice to Branham in May of 2015 that it had reason to suspect fraud may have been involved in the granting of his benefits in 2007, and under § 205(u) of the Social Security Act, the SSA would need to redetermine his entitlement to benefits. [*Id.* at pgs. 721–22].

On June 2, 2016, a redetermination hearing was held before ALJ Joseph R. Doyle. [*Id.* at pgs. 21–23]. ALJ Doyle issued a decision finding that Branham was not disabled during the relevant period and ordered the termination of his benefits. [*Id.* at pgs. 24–45]. The Appeals Council denied Branham's request for a review of ALJ Doyle's unfavorable redetermination decision. [*Id.* at pgs. 9–11]. Accordingly, Branham filed suit to challenge the SSA's 2016

---

[1] Conn, Daughtery, ALJ Charlie Andrus and four doctors, including Dr. Huffnagle, were implicated in the scheme in which "Conn provided the doctors with pre-completed, checklist-style medical opinions indicating that claimants had disabling limitations, regardless of the claimants' actual abilities. The doctors signed the forms and provided them to Conn along with sham examination findings. Conn also paid bribes to ALJ Daughtery, who issued favorable decisions relying solely on the fraudulent evidence. ALJ Andrus worked to cover up the scheme through witness retaliation within the agency." [R. 17 at pg. 3, n. 1].

redetermination process, after which this Court remanded Branham's case to the Commissioner for further proceedings consistent with the Sixth Circuit's ruling in *Hicks* and reinstated Branham's benefits pending further administrative proceedings. [*Id.* at pgs. 717–18]. Due to the COVID-19 Pandemic, an in-person hearing on the matter was not conducted until May 15, 2023, which was held before ALJ Kathleen H. Eiler. [*Id.* at pg. 593]. ALJ Eiler issued her opinion on July 6, 2023, finding, "[a]fter considering the evidence absent fraud or similar fault," that "there is insufficient evidence supporting a finding of disability during the period at issue." [*Id.* at pg. 580]. Branham filed exceptions to the ALJ's decision, but in a letter issued on December 2, 2023, the Appeals Council found "no basis" to disturb ALJ Eiler's decision and "decline[d] to assume jurisdiction." [R. 19-1 at pgs. 4].

Plaintiff Branham subsequently filed his Complaint in this matter on January 9, 2024. [R. 1]. Concurrently with his Complaint, Branham filed a motion to enjoin the Commissioner from ceasing his benefits while his appeal is pending or, alternatively, for the Court to order an evidentiary hearing on the matter. [R. 5]. During the briefing on this motion, the parties consented to the referral of this matter to a magistrate judge, [R. 9], so the matter was referred to the undersigned to conduct all proceedings and order entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The Commissioner also partially moved to dismiss Branham's 42 U.S.C. § 1983 claims on the grounds that the claim was not a viable theory. [R. 16]. The undersigned ultimately denied Branham's motion for a preliminary injunction and granted the Commissioner's partial motion to dismiss as to Branham's Section 1983 claims. [R. 26; R. 27].

Now before the Court is Branham's request for judicial review of ALJ Eiler's decision. [R. 31]. Branham contends that ALJ Eiler's decision was not supported by substantial evidence because she failed to give proper weight to the medical opinions of Dr. Emily McGuire and Dr.

Stephen Nutter. [*Id.*]. The SSA filed a Response opposing Branham's position. [R. 35]. No timely Reply was filed, [*see* R. 6 at pg. 4], so this matter is now ripe for review.

## STANDARD OF REVIEW & FRAMEWORK FOR DISABILITY DETERMINATIONS

### A.

Administrative Law Judges must "follow agency rules and regulations." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). A court reviewing the Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence . . . is 'more than a mere scintilla of evidence'" and "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 217 (1938)). Because the "threshold for such evidentiary sufficiency is not high," *id.*, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It is important to note that where, as here, the Appeals Council denies review of an ALJ's decision, that decision becomes the final decision of the Commissioner. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

Because "[t]he Social Security hearing system is 'probably the largest adjudicative agency in the western world,'" the "need for efficiency" in resolving appeals regarding agency decisions is "self-evident." *Heckler v. Campbell*, 461 U.S. 458, 461 n. 2 (1983) (internal citations omitted). Accordingly, the Commissioner's decision is entitled to great deference. In conducting its review, this court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of

credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See id.* at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if this Court would have resolved the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *Id.*; *see also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence in the record even if it was not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

**B.**

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

(i)  At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment

> to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Thus, Branham bears the burden of establishing the severity of his impairments and that he had greater limitations than the ALJ imposed. *Her v. Commissioner of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999) (noting that "the burden of proof lies with the claimant at steps one through four of the [sequential evaluation] process"); *Higgs v. Bowen,* 880 F.2d. 860, 863 (6th Cir. 1988) (noting that the claimant has the burden to "prove the severity of her impairments"). However, if the ALJ reaches the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's RFC, age, education, and past work experience. *Her*, 203 F.3d at 391.

## THE ALJ'S FINDINGS

As noted above, ALJ Doyle issued an unfavorable decision on redetermination regarding Branham's claim for benefits. [R. 19 at pgs. 556–80]. On remand, ALJ Eiler found at Step One that Branham last met insured status on June 30, 2008, and had not engaged in substantial gainful activity during the period from his alleged onset date of September 27, 2002, through his date last insured (DLI). [*Id.* at pg. 563]. At Step Two, Eiler found that Branham suffers from the following severe impairments: degenerative disc disease of the lumbar spine, obesity, sleep apnea, and a depressive disorder. [*Id.* at 564]. At Step Three, Eiler determined that Branham's impairments, through his DLI, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [*Id.* at pg. 565–68]. In determining Branham's RFC, ALJ Eiler stated the following:

> Through October 16, 2007, the date of the prior award, [Branham] had the [RFC] to perform light work as defined in 20 CFR 404.1567(b), except: He was never able to climb ladders, ropes, or scaffolds but could occasionally climb ramps or stairs; occasionally stoop, kneel, crouch, or crawl. He could frequently balance. He should have avoided concentrated exposure to vibration and fumes. He was able to perform simple, routine, and repetitive tasks, and could withstand occasional changes in routine work setting.

[*Id.* at 568].

Based on Branham's RFC and accompanying findings of fact, ALJ Crocker concluded at Step Four that Branham was unable to perform any past relevant work through the DLI. [*Id.* at pg. 578]. At Step Five, however, Eiler found that Branham is "not disabled"—and thus ineligible for benefits—because Branham "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy" through his DLI. [*Id.* at pgs. 579–80]. In making that determination, she relied on a vocational expert who testified that Branham would have been able to perform the requirements of the following occupations: (i) Order caller (D.O.T. #209.667-104), (ii) Marker (D.O.T. #209.587-034), and (iii) Routing clerk (D.O.T. #222.687-022). [*Id.*].

## DISCUSSION

Branham avers that ALJ Eiler improperly weighed the medical opinions of Dr. McGuire and Dr. Nutter, claiming that Eiler discounted their medical opinions without good reason. [R. 31 at pgs. 10–12]. In response, the Commissioner contends that Eiler properly assigned "limited weight" to the doctors' medical opinions given their status as non-treating physicians, and Eiler's decision is otherwise supported by substantial evidence. [R. 35 at pgs. 3–10].

### A.

Turning first to Dr. McGuire, Branham claims that Eiler should have considered McGuire's medical opinion because it was "not formed entirely based upon the subjective descriptions given by [Branham] but was also formed based upon the results of the mental examination she

performed." [R. 31 at pg. 11]. On March 2, 2007, Dr. McGuire conducted a psychiatric evaluation of Branham, diagnosing him with major depressive disorder and making the following findings:

> Mr. Branham's capacity to understand, remember, and carry out instructions towards the performance of simple repetitive tasks appears affected by symptoms of depression to a slight degree. His ability to tolerate stress and pressure of day-to-day employment appears affected by these impairments to a marked degree at this time. His ability to sustain attention and concentration towards the performance of simple repetitive tasks appears affected by these impairments to a moderate degree. His capacity to respond appropriately to supervisors and coworkers in a work setting appears affected by these impairments to a moderate degree.

[R. 19 at pgs. 438–39]. Dr. McGuire also noted that Branham could not spell the word "world" backwards or repeat up to a three-digit series of numbers in reverse, was easily distractable, had a restrictive affect, and possessed an angry and pessimistic mood. [*Id.* at pg. 437].

ALJ Eiler considered Dr. McGuire's opinion but determined that it should only be given "partial weight because it is, in part, consistent with Dr. McGuire's own evaluation of the beneficiary during the [March 2007] evaluation and is not undermined by other medical evidence of record." [*Id.* at pg. 575]. However, ALJ Eiler went on to state the following:

> The undersigned departs from Dr. McGuire's opinion with respect to her estimation of [Branham]'s ability to tolerate pressure of day-to[-]day employment and stress as this part of the opinion is undermined by [Branham]'s own reported activities of daily living to the examiner, his excellent and long work history, record of minimal specialized treatment, and mostly unremarkable mental health assessments. From this, the undersigned finds that this portion of her opinion is disproportionate with the medical evidence and [Branham]'s reports as the totality of this does not show an inability to tolerate stress at work.

[*Id.* at pgs. 575].

An ALJ must consider several factors when determining the necessary weight to give a medical opinion, 20 C.F.R. § 404.1527(c), the most important of which are whether the doctor's opinion is supported by and consistent with the overall medical record. *See* 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical

opinions or prior administrative medical findings to be."); *see also* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). Moreover, although the treating physician rule requires an ALJ to give greater deference and weight to the opinions of treating physicians, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007), "[i]t is well established that the opinions of *consultative* [medical] examiners are not entitled to controlling weight." *Caldwell v. Astrue*, Civil Action No. 08-350-HRW, 2009 WL 3756992, at *3 (E.D. Ky. Nov. 9, 2009) (citing 20 C.F.R. § 404.1527(d)(2)) (emphasis added).

Here, ALJ Eiler properly discounted Dr. McGuire's medical opinion. Eiler found Dr. McGuire's opinion unpersuasive because it was inconsistent with, and lacked support in, the objective medical record. [R. 19 at pgs. 575–76]. Indeed, ALJ Eiler referenced several inconsistencies between Dr. McGuire's opinion and the medical record, some of which were expressly based on Branham's own statements about his ability to perform various daily activities. [*See id.* at pg. 575–6 ("Specifically, [Branham] reported being independent in his daily activities, management of his bank account, driving, daily social interaction with friends[,] and grocery shopping."]. Moreover, there are two additional reasons that Eiler did not have to give Dr. McGuire's medical opinion controlling weight. First, an ALJ need not give controlling weight to a consultative doctor's medical opinion. *See Caldwell*, 2009 WL 3756992, at *3. And second, when a medical opinion—even one provided by a treating physician—relies too heavily on the claimant's own representations and was inconsistent with the objective medical record, as is the case here, an ALJ is not required to give the opinion substantial weight. *See Staymate v. Comm'r of Soc. Sec.*, 681 Fed.App'x. 462, 467 (6th Cir. 2017) (citing *Keeler v. Comm'r of Soc. Sec.*, 511

Fed.App'x. 472, 473 (6th Cir. 2013)) ("We have previously found reasoning that a medical opinion relied too heavily on the claimant's subjective complaints as adequate to support an ALJ's decision to give little weight to the opinion."); *see also Francis v. Comm'r of Soc. Sec. Admin.*, 414 Fed.App'x 802, 805–06 (6th Cir. 2011) (finding no error in an ALJ's decision to give little weight to a treating physician's medical opinion when it was inconsistent with the claimant's purported ability to perform various daily activities).

Finally, Branham's argument that ALJ Eiler failed to adequately support her reason to discount Dr. McGuire's opinion is unavailing. Indeed, while an ALJ must provide "good reasons" when explaining the weight that has been given to treating providers' opinions, *Rogers*, 486 F.3d at 242, this requirement does not extend to an ALJ's consideration of a consultative medical opinion. *See* 20 C.F.R. § 404.1527(c)(2); *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Thus, because Dr. McGuire was not a treating physician, [*see* R. 31 at pg. 11 (recognizing that Dr. McGuire is not a treating physician)], ALJ Eiler did not have to provide "good reasons" for explaining the lack of weight given to her medical opinion. Having failed to present sufficient evidence to rebut ALJ Eiler's finding that Dr. McGuire's opinion was contradicted by the record and relied too heavily on his subjective complaints, Branham's argument that Eiler improperly discounted Dr. McGuire's medical opinion must fail.

### B.

Moving on now to Dr. Nutter, whose medical opinion Branham also argues was improperly discounted. On April 19, 2007, Branham saw Dr. Nutter for a consultative physical examination. [R. 19 at pgs. 462–66]. Dr. Nutter's diagnostic impressions were that Branham was dealing with chronic lumbar strain, chest pain, sleep apnea, and degenerative arthritis. [*Id.* at pg. 465]. Based on these impressions and his general findings, Dr. Nutter concluded that Branham's "ability to

perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying[,] and traveling as well as pushing and pulling heavy objects appears to be impaired due to back pain and joint pain." [*Id.* at pgs. 465-66]. ALJ Eiler considered Dr. Nutter's opinion in her determination and gave it "some weight" because "the medical evidence of record shows that [Branham] was limited to some extent in his abilities due to degenerative disc disease of the lumbar spine." [*Id.* at pg. 576]. However, Eiler ultimately credited Dr. Nutter's opinion limited weight because it "lack[ed] specificity and is not outlined in functional terms which correlate with" SSA regulations. [*Id.* at pg. 577].

Branham takes exception with Eiler's decision to give Dr. Nutter's opinion limited weight, calling it "egregious" because: (i) Dr. Nutter performed a "thorough physician examination"; (ii) his findings are supported by and consistent with the objective medical record; and (iii) the 2007 Disability Determination Explanation gave great weight to Dr. Nutter's opinion. [R. 31 at pgs. 11–12]. Again, however, Branham's arguments are unavailing.

First, both the Commissioner and Branham agree that Dr. Nutter's opinion insufficiently described Branham's limitations. [R. 31 at pg. 12; R. 35 at pg. 5]. The Sixth Circuit has explained that, where a medical opinion is vague or unclear, an ALJ's decision to give that opinion little weight is not error. *See, e.g.*, *Quisenberry v. Comm'r of Soc. Sec.*, 757 Fed.App'x. 422, 431 (6th Cir. 2018); *Kestel v. Comm'r of Soc. Sec.*, 756 Fed.App'x. 593, 600 (6th Cir. 2018). Thus, Eiler's decision to accord Dr. Nutter's vague and unclear medical opinion little weight was not error.

Second, Branham has failed to provide any evidence or citation to the record indicating that his RFC calculation would have changed had ALJ Eiler given Dr. Nutter's opinion greater weight. As noted above, after considering the records and a plethora of medical opinions in the medical record, Eiler determined that Branham had the RFC "to perform light work as defined in

20 CFR 404.1567(b)," albeit with some notable exceptions. [R. 19 at pg. 568]. Relevantly, Eiler determined that Branham "was never able to climb ladders, ropes, or scaffolds but could occasionally climb ramps or stairs; [and] occasionally stoop, kneel, crouch, or crawl." [*Id.*]. These restrictions largely mirror the findings of Dr. Nutter, and ALJ Eiler clearly recognized that, hence the reason Dr. Nutter's opinion was given "some weight." [*Id.* at 576]. Therefore, because Branham has failed to provide any evidence or citation to the record to indicate that Eiler's RFC calculation would have changed even if Dr. Nutter's opinion had been given greater weight, *see Watters v. Comm'r of Soc. Sec. Admin.*, 530 F.App'x. 419, 423 (6th Cir. 2013) (holding that failure to properly accord weight to a medical report is harmless error if the ALJ makes findings otherwise consistent with that discounted medical opinion), his second argument must also fail.

Finally, the fact that the 2007 Disability Determination Explanation relied heavily on Dr. Nutter's opinion did not bind ALJ Eiler when she rendered her decision. *See* 20 C.F.R. § 404.921(a) (holding that a reconsideration determination is not binding when the claimant appeals the decision to an ALJ). Thus, Eiler was not required to put the same weight into Dr. Nutter's opinion when she made her determination. Accordingly, because ALJ Eiler's decision to discount Dr. Nutter's opinion is supported by substantial evidence and Branham has otherwise failed to demonstrate that his RFC would have changed had more weight been given to Dr. Nutter's opinion, Branham's third and final argument is unavailing.

## CONCLUSION

Johnny Branham appealed the Commissioner's final decision finding that he can perform light work, arguing that ALJ Eiler's findings were not supported by substantial evidence because Eiler failed to accord proper weight to the medical opinions of two consultative doctors: Dr. McGuire and Dr. Nutter. But the record indicates that there is substantial evidence to support

Eiler's findings and decision to give limited weight to the medical opinions of Dr. McGuire and Dr. Nutter. Therefore, because Branham has failed to satisfy his burden of proof to warrant a reversal of ALJ Eiler's decision, the Commissioner's final decision will be **AFFIRMED**. A separate judgment will follow.

      Signed February 26, 2025.



Signed By:
*Edward B. Atkins*   *EBA*
**United States Magistrate Judge**